1    Honorable Richard A. Jones

2

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF WASHINGTON
10                            AT SEATTLE

11  TRIDENT SEAFOODS CORPORATION,

12                Plaintiff,              NO. C10-214RAJ

13        vs.                            ORDER

14  COMMONWEALTH INSURANCE
    COMPANY,
15
                  Defendant.
16

17                    I.      INTRODUCTION

18        This matter comes before the court on Defendant's motion for summary

19  judgment or, in the alternative, a stay pending appraisal (Dkt. # 13).  Though the parties

20  requested oral argument, the court finds the motion suitable for disposition on the basis

21  of the parties' briefing and supporting evidence.  For the reasons explained below, the

22  court GRANTS IN PART and DENIES IN PART Defendant's motion (Dkt. # 13).

23                    II.      BACKGROUND

24        On July 21, 2008, a fire in Chignik Bay, Alaska, destroyed part of a cannery

25  facility owned by Plaintiff Trident Seafoods Corporation ("Trident").  Trident was

26  insured for up to $5 million under its primary insurance policy, and was insured for

ORDER - 1

another $5 million under its first excess policy.  Trident had a second excess insurance

policy, with Defendant Commonwealth Insurance Company ("Commonwealth").  The

Commonwealth policy ("the Policy") covered Trident for up to $10 million more, if the

$10 million threshold was exceeded.  The Policy includes the following provisions, in

relevant part:

> NOTICE OF LOSS.  The insured shall as soon as practicable report in writing to the Company every loss, damage or occurrence which may give rise to a claim under this Policy and shall also file with the Company within Ninety (90) days from date of discovery of such loss, damage or occurrence, a detailed sworn Proof of Loss. . . .

> EXAMINATIONS UNDER OATH.  The Insured, as often as may be reasonably required, shall exhibit to any person designated by the Company all that remains of any property herein described, and shall submit, and insofar as is within his or her power cause his or their employees . . . and others to submit, to examinations under oath by any person named by the Company and subscribed the same; and as often as may be reasonably required, shall produce for examination all writings, books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by the Company or its representative, and shall permit extracts and copies thereof to be made.

> APPRAISAL.  If the Insured and the Company fail to agree as to the amount of loss, each shall, on the written demand of either, made within Sixty (60) days after receipt of Proof of Loss by the Company, select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place . . .

Houser Decl. (Dkt. # 15), Ex. A.

After the fire, Trident notified the three insurers of the fire and provided

documentation suggesting that the total loss exceeded $20 million.  Trident's primary

insurer paid $5 million, and Trident's first excess insurer also paid $5 million.  *See*

Houser Decl., Ex. C.

After Trident notified Commonwealth of the fire, Commonwealth sent Trident a

letter dated December 18, 2008, which quoted the Policy language regarding EUOs and stated that Commonwealth had "elected under the terms and conditions of [the Policy] to take the [EUO] of an authorized representative from Trident Seafoods as part of the Proof of Loss." Houser Decl., Ex. D at 2.[1]  That letter enclosed a "Proof of Loss" form for Trident to complete.  *Id*. at 4.  The letter also requested that Trident submit all written materials that it believed supported the claim, and stated that those "written materials will be treated as part of the Proof of Loss."  *Id*. at 3.  The December 18 letter requested that documents be submitted by December 29, 2008, to allow Commonwealth to review them in advance of a proposed January 6, 2009 EUO.

Trident apparently did not respond to this letter, and Commonwealth contacted Trident on January 12, 2009, to follow up.  *See* Houser Decl., Ex. E-6.  On January 14, 2009, Trident requested a postponement of the EUOs until the week of February 9, and Commonwealth offered to reschedule EUOs for two representatives.  *See* Houser Decl., Ex. E-7.  On January 27, Commonwealth asked for a response to its January 14 offer to reschedule the EUOs.  *See* Houser Decl., Ex. E-8.  On January 28, Trident sent a letter to Washington's Insurance Commissioner, claiming that Commonwealth had acted in bad faith.  *See* Houser Decl., Ex. E-9.  On February 4, Commonwealth wrote to Trident to renew its request for EUOs and a completed "Proof of Loss" form.  *See* Houser Decl.,

---

[1] The court notes that at this time, Commonwealth was aware that in 2007, Trident had submitted a "statement of values" regarding the Chignik facility and equipment, assigning $6.5 million in value for the buildings and equipment.  *See* Houser Decl., Ex. B ("statement of values" for Trident facilities, suggesting that the Chignik values were for replacement cost (by virtue of the "RC" indication in the column marked "RC/ACV")); Puracal Decl., Ex. A (EUO transcript wherein a Trident representative states that the "statement of values" intended to communicate to Trident's insurance brokers that "that's what we thought they were worth, and we asked our broker to purchase that much insurance for them," and to insurers that "if there was a loss, that's what we would receive").  Commonwealth also was aware of a 2008 appraisal performed for claim-adjustment purposes which valued the Chignik loss at higher than $10 million.  *See* Campos Decl., Ex. A.  The court notes these documents not to suggest that they establish the relevant value of the Chignik facility for purposes of the parties' dispute in this lawsuit, but only to describe some of the information available at the time the December 2008 letter was written.

ORDER - 3

1   Ex. E-10.  That same day, Commonwealth also wrote to Washington's Insurance

2   Commissioner, to explain that Commonwealth could not have denied coverage in bad

3   faith, given that the claim "is still in the very preliminary stages.  Trident has not yet

4   filed a Proof of Loss."  Houser Decl., Ex. E-11.

5        On February 6, Commonwealth responded to an e-mail from Trident requesting a

6   clarification about the value of the property damage, explaining its position on that issue

7   and renewing its request for EUOs and a Proof of Loss statement.  *See* Houser Decl.,

8   Ex. E-12.  On February 10, Commonwealth reiterated its request for EUOs and

9   document production, proposing a schedule for both.  *See* Houser Decl., Ex. E-13.

10  Trident did not respond to this letter.  *See* Houser Decl., Ex. E-14.  On February 25,

11  Commonwealth again advised Trident that it had not made a coverage determination

12  due to Trident's failure to comply with requests for EUOs, document production, and a

13  Proof of Loss statement.  *See* Houser Decl., Ex. E-15.

14       On March 12, Commonwealth wrote to Trident again to remind counsel of

15  Commonwealth's outstanding requests: "As you are well aware, Commonwealth has

16  formally requested to take [EUOs] as part of Trident's Proof of Loss, subject to

17  Commonwealth's full and continuing reservation of rights."  Houser Decl., Ex. E-16.

18  Trident informed Commonwealth that it would complete its Proof of Loss form and

19  submit documents in mid-April 2009, and Commonwealth responded to propose April

20  dates for EUOs.  *See* Houser Decl., Ex. E-17.  On March 30, Commonwealth responded

21  to a Trident demand for production of its underwriting file, contending that it would not

22  produce the file until Trident presented the claim "along with a proper Proof of Loss

23  form, the production of all documents previously requested, and the presentation of the

24  individuals that Commonwealth has requested for [EUOs] as part of Trident's Proof of

25  Loss[.]"  Houser Decl., Ex. E-18.

26       On May 4, after the mid-April deadline passed and Commonwealth had not

ORDER - 4

1   received documents from Trident, Commonwealth wrote to Trident to suggest new

2   deadlines for the submission of the Proof of Loss form and a proposed EUO schedule.

3   *See* Houser Decl., Ex. E-19.  Commonwealth sent similar letters on May 27, June 9,

4   June 16, and June 17.  *See* Houser Decl., Exs. E-20-23.  On June 19, Trident submitted

5   its Proof of Loss form, which lists the net value of the claim at approximately $26

6   million (for replacement value) or approximately $20.6 million (for actual cash value).

7   *See* Campos Decl. (Dkt. # 22), Ex. L.  On June 22, Commonwealth acknowledged

8   Trident's submission of the Proof of Loss form, and renewed its requests for documents

9   and EUOs "as part of Trident's Proof of Loss."  Houser Decl., Ex. E-24.  On June 29,

10  Trident wrote to Commonwealth to ask when it wanted to review the documents, and

11  Commonwealth answered "as soon as they are available."  Houser Decl., Ex. E-25.

12  Trident had not responded by July 6, when Commonwealth wrote again, asking

13  "PLEASE LET ME KNOW WHEN YOU WILL BE SENDING THE DOCUMENTS

14  TO US SO WE CAN STUDY THE DOCUMENTS AND SCHEDULE THE

15  EXAMINATIONS UNDER OATH."  Houser Decl., Ex. E-26 (emphasis in original).

16  On July 9, Trident requested that Commonwealth agree to a tolling agreement until

17  October 21, 2009, and Commonwealth responded that same day to indicate that

18  Commonwealth's signatory was out of the office until the following week, but that a

19  tolling agreement would be produced at that time.  *See* Houser Decl., Ex. E-27.  The

20  tolling agreement was sent from Commonwealth to Trident on July 13, and the

21  accompanying letter noted that "Trident's delay in providing documents and completing

22  the [EUOs] as a part of the Proof of Loss is a continuing problem."  Houser Decl., Ex.

23  E-28.  Commonwealth's proposed tolling agreement provided that the "suit limitation"

24  provision in the Policy was tolled until October 31, 2009, and that Commonwealth

25  specifically reserved all rights and defenses, including "a possible breach of Trident's

26  duty to . . . comply with the terms and conditions of the Policy that require [EUOs],

1   production of documents and Appraisal." *Id*.  In the final version of the tolling

2   agreement, the specific rights reserved were not enumerated, but the agreement stated

3   that "Both parties fully reserve any and all rights and defenses, which may now exist or

4   which may arise in the future, with the exception as to the time Trident may bring suit."

5   Houser Decl., Ex. 29.  On July 24, after Trident had filed a lawsuit against

6   Commonwealth and then agreed that it should be dismissed, Commonwealth wrote to

7   Trident to reiterate its position regarding investigation of the claim: "[Commonwealth

8   has] been exchanging letters with your office for the past seven months in an attempt to

9   receive the documents and complete the [EUOs] as a part of the Proof of Loss that

10  Commonwealth needs before it can complete its investigation of this claim."  Houser

11  Decl., Ex. 31.  That letter also recited case authority regarding an insurer's right to take

12  EUOs and request documents.  *Id*.

13      After Trident did not respond to the July 24 letter, Commonwealth wrote to

14  Trident again on August 4 to renew its requests for document production and EUOs,

15  and to request confirmation that the lawsuit had been dismissed.  *See* Houser Decl., Ex.

16  E-32.  On August 7, Commonwealth wrote to Trident, in response to a Trident e-mail,

17  to clarify the July 24 requests: "We would appreciate . . . a clear answer from Trident as

18  to whether it intends to produce all of the documents requested of it and produce all of

19  the individuals that Commonwealth long ago requested to [EUO] as part of Trident's

20  Proof of Loss in this matter."  Houser Decl., Ex. E-33 (emphasis in original).

21      In August and September 2009, Commonwealth took EUOs of some Trident

22  representatives, but Trident had not yet produced Trident's insurance manager Scott

23  Stover for an EUO, as Commonwealth had requested.  *See* Houser Decl., Exs. E-34-36.

24  On September 15, Commonwealth wrote to Trident to renew its request for the

25  production of specific documents.  Houser Decl., Ex. E-36.  On September 23,

26  Commonwealth again inquired of Trident regarding Mr. Stover's availability for an

EUO, and noted, "We are increasingly concerned with Trident's apparent delaying tactics and want to again remind Trident that the Proof of Loss is not complete until all documents requested have been provided and [EUOs] taken, with signed copies of the transcript testimony received by Commonwealth."  Houser Decl., Ex. E-38.  Commonwealth again sought specific answers from Trident regarding the document and EUO requests on September 30.  *See* Houser Decl., Ex. E-39.

An October 19 letter from Commonwealth to Trident states that Mr. Stover's EUO was set for October 26, and notes receipt of some documents on October 15.  *See* Houser Decl., Ex. E-41.  That letter also described Commonwealth's pursuit of an appraisal of the value of the Chignik facility immediately before the fire, and noted that if "there is a disagreement regarding the values established in the appraisals, Commonwealth will likely invoke its contractual right to have any valuation/loss differences resolved by appraisal, as provided in the insurance contract.  Of course, that decision will only be able to be made after the [EUO] and remaining aspects of Trident's Proof of Loss have been completed."  *Id*.

On October 23, Trident wrote to object — for the first time — to Commonwealth's potential intent to its potential exercise of contractual appraisal rights, given that the Policy requires that the appraisal right be exercised within sixty days of the receipt of Proof of Loss, and the Proof of Loss form was submitted in June.  *See* Houser Decl., Ex. E-42.  On October 26, the Stover EUO was completed, during which he described that before the fire he had submitted a "statement of values" estimating the value of the Chignik facility at $10.5 million, and that he reported a value of $2 million in the next "statement of values" after the fire.  *See* Houser Decl., Ex. J.

Commonwealth responded to Trident's October 23 letter on October 27, seeking to correct Trident's perception that its Proof of Loss obligation was satisfied in June:

> Your statement that Trident has submitted a timely "satisfactory proof of loss" is absolutely mistaken.  As you know, Commonwealth has, at all times, treated Trident's [EUOs] as part of its Proof of Loss.  That has been repeated in Commonwealth's written communications throughout this investigation, and Trident has never objected to that position.  As you know, Mr. Stover's [EUO], which Trident resisted providing for approximately 10 months, finally took place yesterday, on October 26, 2009.  Commonwealth's position is that Trident has not fully complied with its insurance contract Proof of Loss responsibilities until Trident has produced all of the requested documents and completed all of the requested [EUOs]. . . . The contractual Appraisal time limit provided for in the insurance contract does not begin until all of the documents have been produced and [EUOs] fully completed.

Houser Decl., Ex. E-45.  That letter also outlined which documents Trident had not yet produced.  *Id*.  On October 28, Trident responded to Commonwealth's argument regarding the ongoing "Proof of Loss" process:

> [Y]our assertions that the Proof of Loss procedure is not completed until Commonwealth has obtained all the documents and examinations you demand, with regard to whether they are relevant or not, is wholly unsupported by the policy or the law.  Where in any of the policies is the completion of the Proof of Loss procedure conditioned in any [sic] upon [EUOs] or the production of particular documents?  Commonwealth has waived its contractual right to the appraisal process because the Proof of Loss was submitted to Commonwealth far more than 60 days ago.  (Commonwealth's unfounded position as to this issue alone makes a declaratory judgment lawsuit ripe at this time.)

Campos Decl., Ex. M.

Despite their disagreements, the parties agreed to extend the tolling agreement for six months, moving the suit limitation date to April 30, 2010.  *See* Houser Decl., Ex. E-47.  The parties also scheduled a mediation for January 2010.  On November 5, Commonwealth wrote to Trident to invoke its Appraisal right:

> As you are aware, on presently known facts, there is a very real question as to whether the Actual Cash Value of Trident's property lost at Chignik even totals the threshold $10 million attachment point of

Commonwealth's excess policy.  <u>Therefore, as Commonwealth has previously reserved the right to do so, Commonwealth hereby exercises its contractual right to Appraisal to determine the Actual Cash Value of Trident's lost property at Chignik</u>. . . .

Throughout Commonwealth's investigation of this matter, it has been explicitly stated that the [EUOs] were a part of Trident's Proof of Loss. Trident never objected to that position and delayed and resisted producing most of the requested [EUO] witnesses (and documents) until only recently.  Commonwealth certainly did not "waive" its contractual rights to Appraisal.  As you know, and as we have previously expressed, the law in Washington and about every other state universally holds that "waiver is the voluntary relinquishment of a known right."  Commonwealth did not waive its contractual Appraisal rights.  Quite to the contrary, Commonwealth has at all times explicitly reminded Trident in all of our letters that "no waiver or estoppel is intended."  Commonwealth explained to Trident that the [EUOs], long ago requested and still not completed, were a part of Trident's Proof of Loss.  Trident's apparent position that Trident's delays in producing documents and making witnesses available for [EUO] somehow deprived Commonwealth of its contractual Appraisal rights makes no sense.

Houser Decl., Ex. E-48 (emphasis in original).  Trident responded to this portion of the letter as follows:

As for Commonwealth's purported exercise of its contractual right for an appraisal, as we have informed you in the past, Commonwealth's request is untimely pursuant to the terms of the policy itself.  We have a legitimate and ripe controversy as to this issue, as well as other current issues, that will need resolution by the court, apparently.  However, in the spirit of cooperation, assuming Commonwealth fulfills the other conditions and its obligations for mediation, and the mediation goes forward on January 12, or thereabouts, Trident proposes that Commonwealth withdraw its exercised right for an appraisal, without prejudice, such that the mediation may go forward.  Should the mediation fail, Commonwealth can assert its alleged appraisal right then, and Trident will respond appropriately.

Houser Decl., Ex. E-49.

On January 14, 2010, the day after the mediation proved to be unsuccessful,

1   Commonwealth renewed its contractual appraisal right.  *See* Houser Decl., Ex. E-61.

2   That same day, Trident sued Commonwealth in King County Superior Court, asserting

3   claims for breach of contract, bad faith, violations of Washington's Consumer

4   Protection Act ("CPA") and Insurance Fair Conduct Act ("IFCA"), and declaratory

5   judgment.  Commonwealth removed to this court, and moved for summary judgment or,

6   in the alternative, a stay pending appraisal.

7   **III.    ANALYSIS**

8   **A.    Legal Standards.**

9       Summary judgment is appropriate if there is no genuine issue of material fact and

10  the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The

11  moving party bears the initial burden of demonstrating the absence of a genuine issue of

12  material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving

13  party meets that initial burden, the opposing party must then set forth specific facts

14  showing that there is a genuine issue of fact for trial in order to defeat the motion.

15  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

16  **B.    Commonwealth Properly Invoked an Appraisal Demand.**

17      Commonwealth argues that because the Policy provided that both parties had the

18  right to demand an appraisal, and because Commonwealth invoked that right, Trident's

19  lawsuit is premature and should be either dismissed or stayed until an appraisal can take

20  place.  Trident contends that Commonwealth waived its right to an appraisal because its

21  demand was not made within sixty days after Trident submitted its completed Proof of

22  Loss form.  Commonwealth argues in reply that (1) all of Commonwealth's

23  communications specifically state that the "Proof of Loss" process includes requested

24  EUOs and document submissions, which is consistent with Policy provisions requiring

25  Trident's compliance with reasonable requests; and (2) Commonwealth did not waive

26  its right to appraisal because all of its conduct indicates a desire to reserve, not waive,

1    that right.

2    The parties' dispute centers on the meaning of the phrase "Proof of Loss" as used

3    in the Policy's "Appraisal" section.  Commonwealth argues that this phrase

4    encompasses both the form entitled "Proof of Loss" and the other evidence that it

5    referred to in correspondence with Trident as "part of Trident's Proof of Loss," namely

6    the requested EUOs and documents.  Trident contends "Proof of Loss" refers only to the

7    form entitled "Proof of Loss."

8    Regrettably, the Policy does not define "Proof of Loss."  Commonwealth,

9    however, made its interpretation of the phrase abundantly clear in its correspondence

10   with Trident, as early as the December 2008 letter in which it stated that it viewed

11   EUOs and document requests as part of Trident's Proof of Loss.  *See* Houser Decl., Ex.

12   D.  The earliest point at which Trident objects to this view is October 28, 2009, even

13   though Commonwealth had repeatedly and specifically referred to its view of the "Proof

14   of Loss" as including EUOs and document production in many letters between

15   December 2008 and October 2009.

16   Commonwealth's position is consistent with Washington courts' view that the

17   concept of "proof " for purposes of an insurance claim "means sufficient notice to allow

18   insurers to evaluate their rights and liabilities and to investigate claims."  *Van Noy v.*

19   *State Farm Mut. Auto. Ins. Co.*, 98 Wn. App. 487, 494 (1999) (construing the phrase

20   "proof of amount due" for purposes of an insurance policy that used but did not define

21   that phrase); *see also Towey v. New York Life Ins. Co.*, 27 Wn.2d 829, 834 (1947)

22   ("'Except where the policy requires proofs of loss to include particular documents or

23   exhibits, a proof of loss is sufficient if it gives the company enough information to

24   enable it to frame an intelligent estimate of its rights and liabilities.'" (quoting 45 C.J.S.

25   – Insurance, § 987)).  The Washington Administrative Code also contemplates that

26   some "Proof of Loss" statements will not be sufficient to allow an insured to make a

decision regarding coverage, given that it allows an insurer to object to the sufficiency of the "Proof of Loss" form statement and request additional time to investigate.  *See* WAC 284-30-380.  Given that Trident's "Proof of Loss" form did not detail the particulars of the loss claimed, and Commonwealth had previously expressed a desire to obtain more detailed information, Commonwealth's objections to the sufficiency of Trident's "Proof of Loss" form were reasonable.

Because Commonwealth's objections were reasonable and reiterated almost immediately upon receipt of the "Proof of Loss" form, this is not a situation similar to *Sevier v. U.S. Fid. & Guar. Co.*, 497 So.2d 1380, 1384 (La. 1986).  In that case, the court analyzed whether a "satisfactory" proof of loss had been provided more than sixty days before the insurer's appraisal demand, and found that the informal documents provided were satisfactory because they provided notice of the extent of required repairs and the cost of making those repairs.  *Sevier*, 497 So.2d at 1384.  It does not appear that the insurer objected to the insured's documentation before demanding an appraisal, which is what distinguishes this case from *Sevier*.

For that same reason, this case is also distinguishable from *Nguyen v. St. Paul Travelers Ins. Co.*, 2007 WL 1672504 *4 (E.D. La., Jun. 6, 2007), wherein the insureds submitted an evaluation of the scope of damages to the insurer in April 2006, the insurer made some sort of loss payment in the months that followed, and then the plaintiffs filed a lawsuit in August 2006 to recover payments for other categories of damage that were not covered in the payments.  In response to the filing of the lawsuit, the insurer attempted to make an appraisal demand, and moved to stay the litigation on September 1, 2006.  *Nguyen*, 2007 WL 1672504 at *1.  The court found that the appraisal demand was untimely because the April 2006 evaluation was a sufficient proof of loss, triggering a sixty-day time limit.

It is Commonwealth's repeated objections to the sufficiency of Trident's June

2009 "Proof of Loss" form that distinguishes this case, because Commonwealth and Trident kept in very frequent contact during the period while Commonwealth was attempting to resolve the disputes regarding the value of the destroyed and damaged property.  Commonwealth stated its position regarding an ongoing "Proof of Loss" process (and its relationship to the appraisal right) so many times that Trident could suffer no prejudice as a result of Commonwealth's demand of a contractual appeal in early November 2009.  Trident was repeatedly notified that Commonwealth did not view Trident's June 2009 Proof of Loss form as satisfactory, and yet has presented no evidence showing that it objected to Commonwealth's notifications before the end of October 2009.

Given that Commonwealth specifically stated that Trident's "Proof of Loss" obligations required the completion of, *inter alia*, an EUO of Mr. Stover, the earliest point at which Trident's "Proof of Loss" obligation could be considered satisfied was the completion of Mr. Stover's EUO on October 26, 2009.  Thus, Commonwealth's November 5 appraisal demand — invoked ten days after the Stover EUO — complied with the sixty-day deadline under the Policy.

Consistent with that finding, Commonwealth repeatedly stated its position regarding Trident's ongoing "Proof of Loss" responsibilities, and also repeatedly stated that it was not waiving its right to contractual appraisal.  *See* Houser Decl., Exs. E-28-41, E-43-48, E-50, E-52-61 (communications dated July 23, 2009; July 21, 2009: July 24, 2009; August 4, 2009; August 7, 2009; August 20, 2009; September 15, 2009; September 18, 2009; September 23, 2009; September 30, 2009; October 12, 2009; October 19, 2009; October 23, 2009; October 27, 2009; October 29, 2009; November 5, 2009; November 13, 2009; November 19, 2009; December 8, 2009; December 9, 2009; December 31, 2009; January 4, 2010; January 5, 2010; January 6, 2010; January 12,

1   2010; and January 14, 2010).[2]  Because Commonwealth, over a period of months,

2   repeatedly stated that it did not waive its right to contractual appraisal in light of its

3   ongoing objections to Trident's "Proof of Loss," the court finds that Commonwealth did

4   not waive its right to appraisal due to untimeliness.

5   **C.     The Court Will Stay This Action Pending Appraisal Per the Policy.**

6           Because Commonwealth properly invoked its appraisal right, this case shall be

7   stayed to allow the parties an opportunity to obtain a contractual appraisal, rather than

8   dismissed.  *See Keesling v. W. Fire Ins. Co. of Fort Scott*, 10 Wn. App. 841, 850 (1974)

9   (affirming the trial court's findings that an insurer had not waived its right to demand

10  appraisal, but reversing dismissal and remanding for the imposition of a stay pending

11  appraisal).  Though it appears to be undisputed that Commonwealth has obtained its

12  own appraisals of the Chignik property and the fire damage, those appraisals were

13  undertaken for purposes of claim adjustment and were not binding, as contemplated by

14  the "Appraisal" section of the Policy.  *See* Houser Decl., Ex. E-2 (letter describing an

15  appraisal performed for purposes of adjusting the claims against the Commonwealth

16  policy as well as another Trident policy).  The purpose of the appraisal provision of the

17  Policy is to allow the parties, if they dispute the value of the loss, to obtain a binding

18  determination of the value of the loss, and none of the appraisals performed to date as to

19  the Chignik facility have been conducted for that purpose.

20  _____

21  [2] Though Trident argues that Commonwealth's counsel's letters are "disingenuous" and written
    in "attempt to create a false record," Trident does not and cannot argue that they did not, at the
    very least, put Trident on notice of Commonwealth's position regarding the "Proof of Loss"

22  "process" from the earliest stages.  *See* Pltf.'s Opp'n (Dkt. # 16) at 3 n.1.  Notably, Trident does
    not cite any correspondence earlier than October 2009 wherein Trident objected to

23  Commonwealth's position.  Though Trident argues that one of its representatives objected to
    Commonwealth's position as early as September 8, 2009, it quoted the EUO transcript out of
    context; it appears that after Commonwealth's counsel explained its position regarding EUOs

24  as part of the "Proof of Loss," Trident's representative nodded his head, and Trident's counsel
    clarified for the record that the representative nodded his head to acknowledge that he had

25  heard the statement, but that the nod did not imply that he agreed with the statement.  *See*
    Campos Decl., Ex. K.  This exchange does not constitute an objection on the part of Trident,

26  but merely demonstrates that Commonwealth reiterated its position orally as well as in writing.

Though Trident requested that the court require Commonwealth to post a bond in the event of a stay, Trident cited no authority relevant to that request. Trident cited a case discussing both injunctive relief and a motion to stay, but no authority equating the imposition of a stay with injunctive relief requiring a bond. *See Lieving v. Cutter Assocs., Inc.*, 2010 WL 428800 (D. Minn. Feb. 1, 2010) (discussing whether filing a preliminary injunction motion was consistent with invoking a right to arbitrate). In the absence of any authority requiring such an action, the court declines to impose a bond.

**D.   The Court Will Resolve Any Appraisal-Related Disputes via Motions Practice, but Will Not Continue the Defendant's Motion for Discovery-Related Reasons.**

Trident's Opposition raises at least two other, in some ways alternative, arguments against an appraisal. First, Trident seeks a continuance of Commonwealth's motion under Fed. R. Civ. P. 56(f), because Trident seeks information as to whether Commonwealth has ever taken the position it has taken in this lawsuit in any other disputes with insurance clients in the past. *See* Pltf.'s Opp'n at 4. Trident does not explain why that information would be relevant to resolving Commonwealth's motion. *Cf. Seattle Pump Co., Inc. v. Traders & Gen. Ins. Co.*, 93 Wn. App. 743, 750 (1999) (finding that "an insurer's conduct with respect to other insureds is not relevant" to determining whether the doctrine of election applied to the insurer's conduct with respect to a particular insured). Trident's declarations also fail to specifically illuminate why discovery would be relevant to Trident's ability to oppose Commonwealth's motion. *See* Campos Decl. ¶ 3 ("Trident has served discovery requests requiring Commonwealth to produce its documents and records pertaining to, among other matters, how Replacement Costs and Actual Cash Value computations should be performed and in which situations, and for any documents that support [] its position in this motion. To date it has refused to provide that discovery."). Under these circumstances, the court has no basis to conclude that this information would be

1    relevant to the issues presented in Commonwealth's motion, and denies Trident's

2    request for a Rule 56(f) continuance.

3          Second, Trident suggests that the court should not order the parties to participate

4    in an appraisal process without first resolving disputes related to the appraisal process.

5    The court agrees that the stay of this case for appraisal purposes shall not preclude the

6    parties from filing motions related to the appraisal process, as it appears that the parties

7    dispute the appropriate valuation computations.  *See* Pltf.'s Opp'n at 4-5.

8          Lastly, though Trident requests a fee award related to Commonwealth's motion,

9    because the court has not found that Trident prevailed against Commonwealth's motion,

10   the court will not award fees to Trident.  To whatever degree Trident claims that

11   Commonwealth's briefing misstates the evidence, the court finds that the evidence

12   submitted by both parties permits a fair viewing of the underlying facts.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER - 16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# IV.    CONCLUSION

For these reasons, the court DENIES IN PART as to summary judgment, but regarding a stay GRANTS IN PART the Defendant's motion (Dkt. # 13).  In reaching this resolution, the court considered the supplemental authority[3] submitted by Plaintiff, and thus GRANTS Plaintiff's motion to supplement the record (Dkt. # 39).  This matter is STAYED pending appraisal, except to the extent that the parties require judicial resolution of disputes related to the appraisal process itself.  The clerk shall terminate the remaining pending motions in this case, subject to refiling after the appraisal process is completed.

DATED this 28th day of September, 2010.

The Honorable Richard A. Jones
United States District Judge

_____

[3] The Plaintiff requested that the court consider *American Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398 (2010), in ruling on Commonwealth's motion.  The court did consider that case.  *Alea*'s holdings relate to the insured's duty to defend, which is not at issue in the Defendant's motion.  *See Alea*, 168 Wn.2d at 414 (holding that "Alea's failure to defend based upon a questionable interpretation of law was unreasonable and Alea acted in bad faith as a matter of law.").  To whatever degree *Alea* also touches on the duty to indemnify (*see Alea*, 168 Wn.2d at 404 ("The duty to indemnify exists only if the policy *actually covers* the insured's liability) (emphasis in original)), *Alea* does not represent a change in the law.  Thus, the court finds that *Alea* is not particularly helpful in its resolution of the issues presented in Commonwealth's motion.